Argued and submitted January 14, affirmed April 27, 2005

# THE MUKAI LIVING TRUST DATED DECEMBER 8, 1997,
*Respondent,*

*v.*

## Abe LOPEZ,
*Appellant.*

## CCV0212141; A122795

111 P3d 1150

Richard S. Pope argued the cause for appellant. With him on the briefs were Kjersten H. Turpen and Newcomb, Sabin, Schwartz & Landsverk, LLP.

H. Lee Cook argued the cause for respondent. With him on the opening brief was Stewart Sokol & Gray, LLC. With him on the reply brief was Nadya V. Martin.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

SCHUMAN, J.

---

* Wollheim, J., *vice* Richardson, S. J.

**SCHUMAN, J.**

Plaintiff, a trust that owns a house in Lake Oswego, brought an action to eject defendant, the house's occupant, and for back rent. Defendant answered that, under the terms of an oral agreement with the owner's predecessors, he was entitled to occupy the house during his lifetime. He also counterclaimed in *quantum meruit* to recover the cost of improvements. The court granted plaintiff's motion for summary judgment on the ejectment claim and entered an ORCP 67 B judgment to that effect. Defendant appeals, and we affirm.

Because plaintiff prevailed on summary judgment, we review the record in the light most favorable to defendant. ORCP 47 C. Defendant's mother, Haydee Mukai, and his stepfather, Richard Mukai, purchased a house in Lake Oswego in 1992, and defendant began living there at that time. In 1997, the Mukais conveyed the house to the Mukai Living Trust, of which they were the sole trustees and beneficiaries. Defendant's mother died in 1999, leaving his stepfather as the sole trustee and beneficiary. In 2002, plaintiff, still consisting only of defendant's stepfather, brought this action seeking ejectment.

At that time, defendant had lived in the house for 10 years. He never paid rent, but he testified in his deposition that he recollected contributing to the down payment and that he had paid one year's property taxes, performed maintenance work, and shared the cost of a new fence with his neighbor.

Although the parties agree that plaintiff holds the fee title to the property, they disagree sharply as to who is presently entitled to occupy it. Plaintiff maintains that defendant is a tenant at sufferance and can be ejected more or less at will. Defendant, on the other hand, argues that he and the trust's predecessors reached an oral agreement that he would have a life estate in the house. According to defendant's pleading, the agreement was that he

"could live [on] the premises without charge during his lifetime and would succeed to ownership of the home if he survived [his mother and stepfather]. In exchange, Defendant

agreed to contribute a substantial sum of his money to the down payment; to maintain the premises in good and habitable condition at his expense; and to make a portion of the premises available to Haydee Mukai and Richard Mukai when they visited Portland, Oregon for personal, family or business reasons."

Plaintiff replies that, because a contract to convey an interest in land must be in writing, the oral agreement cannot be enforced. The trial court agreed with plaintiff and so do we.

The statute of frauds applying the writing requirement in this case is ORS 93.020(1):

"No estate or interest in real property, other than a lease for term not exceeding one year, nor any trust or power concerning such property, can be created, transferred or declared otherwise than by operation of law or by a conveyance or other instrument in writing, subscribed by the party creating, transferring or declaring it, or by the lawful agent of the party under written authority, and executed with such formalities as are required by law."

Defendant asserts three reasons why ORS 93.020(1) does not render unenforceable the oral agreement he claims to have reached.

■ First, he maintains that the issue was decided at an earlier stage of this action when the trial court denied plaintiff's motion to dismiss under ORCP 21. The order to which defendant refers states:

"Before receiving exhibits, testimony and argument, the Court ordered that trial of the matter be bifurcated with the issue of the existence of a rental agreement between Plaintiff and Defendant decided first, and if the Court determined that a rental agreement existed, then the Court would hear evidence on and decide Defendant's affirmative defenses. The parties thereupon presented exhibits, testimony and argument. The Court found that Plaintiff failed to prove the existence of a rental agreement between Plaintiff and Defendant."

It is clear that the trial court decided only that the parties had no rental agreement; it did not reach any issue regarding the statute of frauds.

■ ■   Second, defendant argues that, even though the agreement was oral, it is nonetheless enforceable under the doctrine of part performance. That doctrine imposes three requirements that, if met, allow a court to enforce an agreement that would otherwise be unenforceable under ORS 93.020(1). First, the party asserting part performance must provide preponderating evidence of an agreement that is "clear, certain and unambiguous in its terms." *Young v. Neill et al.*, 190 Or 161, 166, 220 P2d 89 (1950); *accord Pion. Cem. Assn. v. Spencer Butte Lodge*, 228 Or 13, 43, 363 P2d 1083 (1961) (clear and precise terms). Second, that party must produce evidence of conduct "clearly and unequivocally referable" to the oral agreement, that is, conduct that is explainable only on the ground that it was performed as part of the contractual *quid pro quo* and not for some other reason unrelated to the agreement. *Strong v. Hall*, 253 Or 61, 70, 453 P2d 425 (1969); *Le Vee v. Le Vee*, 93 Or 370, 377, 181 P 351, *reh'g den*, 183 P 773 (1919). Last, there must be equitable grounds for enforcing the agreement. *Luckey et ux v. Deatsman*, 217 Or 628, 633, 343 P2d 723 (1959).

In the present case, nothing in the summary judgment record amounts to evidence from which a rational juror could find that the parties entered into an agreement with terms "so precise that neither party could reasonably misunderstand them," *Pion. Cem. Assn.*, 228 Or at 43, or that defendant's alleged acts of part performance could be explained only by the existence of a contract giving him a life estate. Defendant's submissions on summary judgment regarding the content of the alleged agreement consisted entirely and exclusively of the following:

1.   A colloquy between plaintiff's attorney and defendant at defendant's deposition:

"Q.   Okay. What was your involvement, if any, in the acquisition of the home on Cherry Crest?

"A.   I found the property.

"Q.   Explain that, you found the property.

"A.   I was the one in search in the market looking for the property, looking for properties to buy. I was instructed

by my mother to find a home for myself, and that's what I did.

"Q.   So Haydee Mukai instructed you to find a home in the Portland area for you?

"A.   Correct.

"Q.   Okay. It wasn't for investment purposes?

"A.   No.

"Q.   Okay. And it wasn't for her use for a vacation home?

"A.   Oh, yes. She could come to the home and—

"Q.   Okay. So part of the reason was a vacation home for Haydee and Richard, then; is that correct?

"A.   My mother—I could not say vacation. My mother was a—was retired at the time. So I guess whenever she desired to visit, she was more than welcome in my home.

"Q.   And it wasn't, in your view, then, a—or was it, in your view, then, a family home?

"[DEFENDANT'S COUNSEL]:   Well, object to the question as confusing and ambiguous.

"*  *  *  *  *

"Q.   Do you understand the question?

"A.   Yes, I understand the question. No. It was my home."

2.   The affidavit of a witness declaring that defendant's mother "told me she was buying the house for [defendant], and asked me to look at several houses with her."

3.   The affidavit of a witness declaring that defendant's mother "told me she was purchasing it for her son, [defendant], and that she and her husband Richard would stay in it when they visited Portland."[1]

---

[1] Plaintiff moved to strike the affidavit statements as hearsay. The court denied the motions, and plaintiff cross-assigns error to those rulings. In light of our decision on defendant's assignments of error, we need not reach the cross-assignment.

4. Defendant's affidavit declaring that "both my mother, Haydee, and my father, Richard, stated that the home was mine."

5. Defendant's stepfather's statement in deposition that the house "was for the family, sure, you know. Like I say, it was for investment purpose and everything. And like when he was going to school, he would help stay in the house and mow the lawn and help with the—uh-huh."

■ This evidence is sufficient to raise a question of fact as to whether defendant's mother and stepfather intended to buy the house "for" defendant's use. However, even giving plaintiff the benefit of all inferences that could reasonably be drawn from that fact, the evidence is far from sufficient to allow a rational juror to find that the parties had an agreement in unmistakably precise terms spelling out each party's promises under the agreement clearly and unequivocally. "The specific performance of a parole contract for the conveyance of real estate will not be enforced under any circumstances unless the terms of the contract are shown * * * to have been so precise that neither party could reasonably misunderstand them." *Pion. Cem. Assn.*, 228 Or at 43 (suit for equitable relief based on part performance of alleged oral agreement). In particular, defendant presented no evidence of an agreement that he would receive a life estate in return for agreeing to "contribute a substantial sum of his money to the down payment; to maintain the premises in good and habitable condition at his expense; and to make a portion of the premises available to Haydee Mukai and Richard Mukai when they visited." Further, to the extent that the evidence establishes a question of fact as to whether defendant made a down payment, performed maintenance, and paid property tax, no rational juror could conclude that such acts could be explained only by the existence of an agreement to give defendant a life estate. In light of the undisputed fact that plaintiff paid no rent, the acts could easily be referable to a month-to-month tenancy or some other form of possessory interest short of the life estate.

■ Finally, defendant argues that the doctrine of equitable estoppel operates to make the oral agreement enforceable despite the fact that it was not in writing. As framed by

defendant, however, that argument cannot be distinguished from the argument based on part performance. Defendant maintains that his acts of part performance were induced by a knowingly false promise that he would receive a life estate in return. But by failing to present any evidence of a promise that he had a life estate in the property, as opposed to some other interest, defendant necessarily also fails to present any evidence that his acts were induced by that promise. *See Luckey et ux*, 217 Or at 633 (doctrine of part performance subsumes doctrine of equitable estoppel; both require evidence of conduct "unequivocally referable to the oral agreement"). In short, the trial court did not err in rejecting all of defendant's attempts to escape the effect of the statute of frauds.

Affirmed.