Argued and submitted September 28, 2012, reversed and remanded
December 11, 2013, petition for review denied May 8, 2014 (355 Or 380)

Donna BURGDORF,
*Plaintiff-Appellant,*

*v.*

Brian K. WESTON,
*Defendant-Respondent.*

Jackson County Circuit Court
083428E2; A147599

316 P3d 303

Darrel R. Jarvis argued the cause for appellant. With him on the briefs was Huycke, O'Connor, Jarvis, Dreyer, Davis & Glatte, LLP.

Richard B. Thierolf, Jr. argued the cause for respondent. With him on the brief was Jacobson, Theirolf & Dickey, P.C.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

DUNCAN, J.

## DUNCAN, J.

This civil case arises out of an ownership dispute concerning a piece of real property, which plaintiff and defendant each assert that they own, and exchanges of money between the parties. Plaintiff appeals from a limited judgment entered by the trial court after the court granted defendant's motion for summary judgment on plaintiff's claims for declaratory relief, fraud, and unjust enrichment and granted defendant's motion for partial summary judgment quieting title to the real property in defendant. Plaintiff argues that the trial court erred in granting summary judgment because there are genuine issues of material fact with respect to each of plaintiff's claims. For the reasons that follow, we agree, and, therefore, reverse and remand.

Because this case comes to us on summary judgment, we review the record in the light most favorable to the nonmoving party—in this case, plaintiff—to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

Plaintiff and defendant were involved in a long-term romantic relationship. Defendant continually promised plaintiff that he would move from Utah to live with her in Oregon. Plaintiff advanced sums of money to defendant, purchased goods for him, and paid for certain living expenses for him and his son. According to plaintiff, those amounts totaled $212,357.84.

In 2004, plaintiff purchased a piece of real property, including land and a mobile home, in Jacksonville, Oregon. Although defendant did not contribute funds to the purchase of the property, the deed listed both defendant and plaintiff, "not as tenants in common but with rights of survivorship." Until this action commenced, plaintiff made all mortgage, insurance, tax, and maintenance payments on the property. Plaintiff also lived on the property. On February 10, 2006, plaintiff conveyed her one-half interest in the property to

defendant for no consideration so that defendant could take out a loan against the property. Defendant then used the property as collateral to obtain a loan of $96,000.00, of which he gave plaintiff $26,276.00. According to plaintiff, she and defendant orally agreed that, once defendant had obtained the loan, he would reconvey plaintiff's one-half interest to her. Defendant did not reconvey plaintiff's original one-half interest and now seeks to sell the property.

Plaintiff filed a complaint on July 24, 2008, seeking declaratory relief. Plaintiff filed an amended complaint on March 18, 2009, alleging claims for declaratory judgment, fraud, and unjust enrichment. With respect to her first claim, plaintiff seeks a declaration from the court that plaintiff owns the property in fee simple absolute and that defendant has no right, title, or interest in the property. Plaintiff also asks the court to order defendant to execute a properly prepared warranty deed transferring the property to plaintiff. In addition, plaintiff asks the court to order defendant to "pay all monetary encumbrances against the property into clear title as of the date of the transfer to the defendant." With respect to her claim for fraud, plaintiff seeks damages in the amount of $212,357.84 and one-half of the value of the land and home. In the alternative, plaintiff seeks to recover those same damages under her claim for unjust enrichment.

Defendant filed an answer denying the majority of plaintiff's allegations, including the existence of the 2006 oral contract. Defendant asserted numerous affirmative defenses, including the statute of frauds. Defendant also alleged counterclaims for ejectment and, if the court awarded the property to plaintiff, unjust enrichment.

On February 22, 2010, defendant filed a motion for summary judgment on all three of plaintiff's claims. Plaintiff filed a response opposing defendant's motion for summary judgment. Plaintiff attached an affidavit by herself, an affidavit by defendant's sister, and exhibits showing that plaintiff had paid for property-related expenses such as the mortgage, taxes, and insurance. Following a hearing, the trial court issued an order granting defendant's motion for summary judgment.

The trial court granted summary judgment to defendant on all three of plaintiff's claims. The court granted summary judgment to defendant on the declaratory judgment claim because it concluded that plaintiff had failed to plead the elements of an enforceable contract, and that, even if she had pleaded those elements, the claim was nonetheless barred by the statute of frauds. ORS 41.580(1)(d) (oral agreements made upon consideration of marriage, other than a mutual promise to marry, are not enforceable); ORS 41.580(1)(e), ORS 93.020 (oral agreements for the sale of real property, or any interest therein, are not enforceable). The court held that plaintiff could not rely on the doctrine of partial performance to avoid the application of the statute of frauds. Under the doctrine of partial performance, if the party asserting the doctrine can show, by a preponderance of the evidence, the existence of an agreement that is clear and unambiguous in its terms, that the partial performance unequivocally and exclusively refers to the agreement, and that there are equitable grounds for enforcing the agreement, then a court may enforce an oral agreement concerning the sale or transfer of an interest in land. *Mukai Living Trust v. Lopez*, 199 Or App 341, 345, 111 P3d 1150 (2005). The trial court first held that plaintiff had not pleaded an oral contract associated with the transfer of property with the requisite clarity, certainty, and absence of ambiguity. The trial court further held that plaintiff could not satisfy the third requirement for partial performance, equitable entitlement to rely on the doctrine, because the 2006 events she relied on to establish her declaratory judgment claim were undertaken to defraud a bank, in that her transfer to defendant was to enable him to use the property, as if it were entirely his own, to secure a loan.[1]

With respect to plaintiff's claim for fraud, the court held that, to the extent that that claim rested on the 2004 purchase of the property, which plaintiff alleged she would

[1] The court also held that, if defendant's alleged promise is viewed as something short of a promise to marry, the declaratory judgment claim still fails because the relationship between plaintiff and defendant does not meet the requirements of a domestic partnership under *Baker and Andrews*, 232 Or App 646, 223 P3d 417 (2009), and, thus, plaintiff cannot recover under the theory of dissolution of a domestic partnership. Because plaintiff did not argue, before the trial court or on appeal, that the agreement was a promise to cohabitate, we do not address that holding.

not have bought if not for defendant's representation that he was going to move to Oregon with her, it was barred by the two-year statute of limitations. The court held that defendant's alleged promise was not actionable as a promise to marry or a promise to cohabitate because Oregon does not recognize the former, and only rarely recognizes the latter, as a cause of action. The court also held that the alleged promise was not enforceable because it was oral and that the doctrine of partial performance did not apply for the same reasons as with respect to the declaratory judgment claim. To the extent that plaintiff's fraud claim rested on the 2006 events, the court held that the 2006 deed transferring title to defendant and plaintiff's 2006 letter to the bank negated the elements of a fraud claim.

The court dismissed plaintiff's claim for unjust enrichment because plaintiff testified in her deposition that she did not loan money to defendant. If plaintiff gave defendant the money as a gift, concluded the court, then there was no claim for unjust enrichment. In addition, the court held that, under *Holdner v. Holdner*, 176 Or App 111, 125, 29 P3d 1199 (2001), *rev den*, 334 Or 288 (2002), plaintiff's evidence regarding the oral agreement with defendant and her 2006 letter to the bank was the kind of inconsistent evidence that is insufficient to make out an equitable claim for unjust enrichment. Finally, the court declined to exercise its equitable powers to award relief for unjust enrichment in light of what it viewed as plaintiff's fraud on the bank.

Defendant filed a motion for partial summary judgment on June 29, 2010, seeking to quiet title to the property in his name. Defendant argued that, in granting his initial motion for summary judgment, the trial court had "necessarily determined that plaintiff has no claim to [the property] or the mobile home located thereon." The court granted defendant's motion for partial summary judgment on August 10. The court entered a limited judgment on December 20, 2010, and plaintiff timely appealed.

On appeal, plaintiff raises four assignments of error.[2] The gravamen of plaintiff's arguments is that the trial court erred in granting summary judgment for defendant because

---

[2] Plaintiff divides her challenge to the court's summary judgment ruling into four assignments of error, but, because assignments of error are directed at

there are genuine issues of material fact regarding each of plaintiff's claims. A genuine issue of material fact exists if, viewing the record in the light most favorable to the party opposing summary judgment, an objectively reasonable juror could return a verdict for that party on the matter that is the subject of the motion for summary judgment. ORCP 47 C. Therefore, in this case, we review each claim, viewing the evidence in the light most favorable to plaintiff, to determine whether defendant demonstrated that he is entitled to judgment as a matter of law. *Aylett v. Universal Frozen Foods Co.*, 124 Or App 146, 148, 861 P2d 375 (1993).

We begin with plaintiff's claim for declaratory relief, which is premised on an alleged 2006 oral agreement between plaintiff and defendant regarding the real property. According to plaintiff, the terms of that agreement were that plaintiff would transfer her one-half interest in the property to defendant so that defendant could obtain a loan, and, once defendant had obtained the loan, he would transfer plaintiff's one-half interest back to her. Plaintiff acknowledges that the statute of frauds would typically prevent a court from enforcing an oral agreement concerning the sale or transfer of an interest in real property. ORS 41.580(1)(e), ORS 93.020. However, plaintiff contends that, in this case, the doctrine of partial performance prevents the application of the statute of frauds. As mentioned, the doctrine of partial performance requires that the party asserting it show, by a preponderance of the evidence, an agreement that is clear and unambiguous in its terms, that the partial performance unequivocally and exclusively refers to the agreement, and that there are equitable grounds for enforcing the agreement. *Mukai*, 199 Or App at 345. If, viewing the evidence in the light most favorable to plaintiff, a reasonable factfinder could conclude that each of the requirements for partial performance was met, then the trial court erred in granting summary judgment in favor of defendant on plaintiff's declaratory judgment claim. That is so because, if the doctrine of partial performance applies, then a court may

---

rulings and not the reasons for the rulings, *Archambault v. Ogier*, 194 Or App 361, 366-67, 95 P3d 257 (2004), plaintiff in fact advances only one assignment of error.

enforce an oral agreement concerning the sale or transfer of an interest in land. *Id.*

The first requirement for the application of the doctrine of partial performance is that the agreement be clear and unambiguous in its terms. In an affidavit that plaintiff submitted in opposition to summary judgment, she asserts that she agreed to sign over her one-half interest in the property to defendant in order to help him obtain a loan, and that defendant agreed that, once he obtained the loan, he would convey her one-half interest back to her. According to plaintiff, that is a basic, straightforward agreement.

Defendant asserts that plaintiff's characterization of the agreement in her deposition, as "just a thing we did," is ambiguous as a matter of law. Thus, according to defendant, plaintiff is unable to show that the terms of the agreement were clear and unambiguous. Defendant's argument might be more persuasive if we were required to analyze plaintiff's statement in a vacuum. However, the context of that statement provides valuable insight into its meaning:

"[DEFENSE COUNSEL]: Other than what you have told me, what convinced you that it was the right thing to do for you to sign a deed giving [defendant] title to 1900 Upper Applegate Road?

"[PLAINTIFF]: I trusted him, I loved him, we were supposed to be together as a—

"[DEFENSE COUNSEL]: I understand that's your state of mind. What did he tell you?

"[PLANTIFF]: I don't know what to tell you.

"[DEFENSE COUNSEL]: What did he tell you, besides what you have already explained to me, what did he tell you that convinced you that this was the right thing to do?

"[PLAINTIFF]: I don't know what you're saying because this was just a thing we did."

Although a reasonable factfinder could interpret plaintiff's statement "I don't know what you're saying because this was just a thing we did" as an admission that her agreement with defendant was ambiguous, a reasonable factfinder could also view it as an exasperated response to a line of

questioning that plaintiff found perplexing. Indeed, a jury could find that the statement "this was just a thing we did" is not inconsistent with plaintiff's other descriptions of what she and defendant did: agree to the transfer and retransfer of the property. The deposition statement does not establish that the agreement was ambiguous as a matter of law.

Moreover, that statement from plaintiff's deposition was not plaintiff's only description of the alleged oral agreement with defendant. In her affidavit, plaintiff characterizes the agreement as follows: "My agreement to sign the property over to [defendant] was based on his agreement to put me back on title after the loan closed." A factfinder could reasonably find that the terms of the agreement were that plaintiff would transfer her interest in the property to defendant, and that defendant would transfer that interest back to plaintiff once he obtained a loan using the property as collateral. Viewing the evidence in the light most favorable to plaintiff, an objectively reasonable factfinder could find that the agreement was clear and unambiguous in its terms. Thus, plaintiff successfully adduced evidence presenting a genuine issue of material fact as to whether the alleged agreement was clear and unambiguous in its terms.

We turn to the second element of partial performance: whether the performance unequivocally and exclusively refers to the agreement. Plaintiff describes her partial performance as her transfer of her one-half interest in the property to defendant on February 10, 2006. Defendant argues that that transfer is not exclusively referable to the alleged agreement because plaintiff had other reasons, such as her personal relationship with defendant, for transferring her interest in the property to him.

Defendant's theory may be a plausible explanation for plaintiff's conduct, but it is not the only plausible explanation. An objectively reasonable factfinder could find that plaintiff transferred her one-half interest in the property to defendant because, and only because, she and defendant had agreed that he would reconvey it to her once he had obtained the loan. Thus, plaintiff has presented evidence sufficient to create a genuine issue of material fact as to whether her

partial performance unequivocally and exclusively refers to the agreement with defendant.

Finally, we turn to the third requirement for application of the doctrine of partial performance: whether there are equitable grounds for enforcing the agreement. *Mukai,* 199 Or App at 345. Plaintiff's affidavit alleges:

"1. The agreement between me and the defendant was not an agreement for the sale of the real property. I purchased the property and put his name on it. The defendant has paid nothing toward the property until this matter was filed. Before that, I paid the mortgage, insurance, taxes, maintenance and improvements.

"2. In 2006, the defendant needed money to pay legal fees and other expenses that he had outstanding, so he could move here. He convinced me to sign the property over to him, based upon his loan person's advice that it would be easier for him to get the funds, if I was not on title, because I lived in Oregon. The agreement was that I would be put back on title after the loan closed.

"3. My agreement to sign the property over to him, was based on his agreement to put me back on title after the loan closed. I had paid all of the costs and expenses of the property up to that point, and the property was free and clear of any encumbrances. I certainly would not have done what I did, had it not been for his representation that I would be put back on title.

"4. After [the] loan closed, for multiple reasons that the defendant came up with, I was not put back on title. However, I continued to make the loan payment, paid the taxes, insurance, maintenance and improvements. Until the middle part of 2008, the defendant paid nothing."

Construing the facts in the light most favorable to plaintiff, a factfinder could reasonably find that, if the agreement were not enforced, defendant would have sole ownership of the real property, even though, until this action commenced, plaintiff paid for the mortgage, insurance, taxes, maintenance, and improvements, due to her belief that defendant planned to abide by their alleged 2006 oral agreement and put her back on the title. Thus, because a reasonable

factfinder could find that failing to enforce the agreement would be inequitable, the same factfinder could find that there were equitable grounds for enforcing the agreement.

Defendant contends, however, that the trial court correctly applied the doctrine of unclean hands to conclude that plaintiff could not show equitable grounds for enforcing the agreement. Under the doctrine of unclean hands, a court may refuse to grant equitable relief to a party who has engaged in misconduct in connection with the matter for which he or she seeks relief. *North Pacific Lumber Co. v. Oliver*, 286 Or 639, 651, 596 P2d 931 (1979) (court has applied doctrine of unclean hands when plaintiff's conduct constituted a crime, fraud, or bad faith; citing cases); *Taylor v. Grant*, 204 Or 10, 24, 279 P2d 479 (1955). However, as we explained in *Welsh v. Case*, 180 Or App 370, 385, 43 P3d 445, *rev den*, 334 Or 632 (2002),

> "[s]everal limitations restrict application of the [unclean hands] doctrine. First, 'the misconduct must be serious enough to justify a court's denying relief on an otherwise valid claim. Even equity does not require saintliness.' *North Pacific Lumber Co.*[, 286 Or at 651]. *** Second, a court will not invoke the maxim if doing so will work an injustice. *Taylor*[, 204 Or at 26]. Third, the party in favor of whom the maxim is invoked must prove that he or she has suffered actual injury due to the alleged misconduct. *Martin v. Allbritton*, 124 Or App 345, 352, 862 P2d 569 (1993)."

The trial court held that plaintiff "cannot satisfy the third requirement for partial performance—equitable entitlement to rely on the doctrine—because the same activities she relies on in 2006 to establish her claim here were undertaken to defraud a bank." The trial court apparently concluded that plaintiff's February 10, 2006, letter to the bank, which she prepared on the same day as she conveyed the property to defendant, was fraudulent. That letter stated, in pertinent part:

> "Dear Sir or Madam:

> "On this 10th day of February 2006, I hereby designate all of the proceeds from the sale of 1900 Applegate Rd, Jacksonville, Oregon 97530 to be given to [defendant]. Attached you will find a copy of the legal description of the property.

"Although my name appears on the Deed, I have no interest in the property.

"* * * * *

"Sincerely,

"Donna Burgdorf"

Thus, plaintiff's 2006 letter to the bank states that she has "no interest in the property." Plaintiff's affidavit further explains,

"2.   In 2006, the defendant needed money to pay legal fees and other expenses that he had outstanding, so he could move here. He convinced me to sign the property over to him, based upon his loan person's advice that it would be easier for him to get the funds, if I was not on title, because I lived in Oregon. The agreement was that I would be put back on title after the loan closed.

"* * * * *

"6.   * * * [The letter] was dictated over the phone to me by the defendant, which he told me to sign so that he could get the loan. The bank had a problem loaning money to just one of us and wanted of [sic] the declaration. As far as the bank was concerned, I had no right title or interest in the property. As far as the defendant was concerned, I was a full partner."

Viewing the evidence in the light most favorable to plaintiff, a rational factfinder could reasonably find that plaintiff's understanding of the February 10, 2006, transactions was as follows: (1) On the same day as she wrote the letter to the bank, plaintiff transferred the property to defendant; thus, the letter accurately stated that plaintiff had no present interest in the property; (2) plaintiff and defendant agreed that, once defendant obtained the loan, he would return the interest that plaintiff transferred to him on February 10, 2006; (3) plaintiff did not understand that her future interest in the property had any legal significance—or at least not any legal significance with respect to the bank. Fully crediting plaintiff's affidavit, a reasonable factfinder could find that plaintiff did not intend to deceive the bank when she wrote the letter and transferred the property on February 10, 2006, but, rather, that

she was relying on defendant's representations that, according to his loan officer, it would be easier for defendant to obtain the loan if plaintiff wrote the letter and transferred the property. A reasonable factfinder could determine that plaintiff believed that she was acting legitimately in order to facilitate the loan and not intending to mislead or harm the bank (whose recorded interest in the property would, in any event, predate any interest that plaintiff might have following defendant's anticipated reconveyance of the interest). Thus, the trial court erred in applying the doctrine of unclean hands to bar the application of the doctrine of partial performance.

Even assuming, for the sake of argument, that plaintiff had engaged in misconduct with respect to the bank, summary judgment based on the unclean hands doctrine would be inappropriate because there were genuine issues of material fact relevant to whether applying the doctrine would work an injustice, *Taylor*, 204 Or at 26, and whether defendant suffered an actual injury due to the alleged misconduct, *Martin*, 124 Or App at 352.

Plaintiff has introduced evidence—her reliance on the alleged agreement with defendant that he would transfer her interest in the real property back to her once he obtained the loan, and her payment of all expenses associated with the property until the filing of this action—from which a factfinder could reasonably determine that there are equitable grounds for enforcing the agreement. Thus, plaintiff has shown a genuine issue of material fact as to whether there are equitable grounds to enforce the agreement. Because there are genuine issues of material fact with respect to all three requirements for application of the doctrine of partial performance, the trial court erred in granting summary judgment against plaintiff's declaratory judgment claim on the ground that the agreement violated the statute of frauds concerning the sale of real property.

Plaintiff also argues that the trial court erred in holding that the agreement between plaintiff and defendant was an agreement upon consideration of marriage, and therefore unenforceable because it violated the statute of frauds. ORS 41.580(1)(d). Plaintiff's affidavit alleges,

"1. The agreement to sign the property over to the defendant and then have the defendant sign the property back over to me after the loan, was not made upon consideration of marriage or anything else. It was done based on the defendant's need for money, to pay his attorney's fees and expenses, so he could move here."

Defendant argues, and the trial court held, that the agreement was upon consideration of marriage. In support of that argument, defendant points to the following excerpts from plaintiff's deposition:

"[DEFENSE COUNSEL]:  Did [defendant] ever propose marriage to you?

"[PLAINTIFF]:  Yes, we talked about marriage.

"* * * * *

"[DEFENSE COUNSEL]:  Why, if you were buying the house, would [defendant's] name be on the deed?

"[PLAINTIFF]:  He was supposed to come and live with me and my boys; and have a life with me, move out here and we were going to live out there."

Although plaintiff's deposition statements could suggest that plaintiff and defendant planned to marry, they by no means compel that conclusion. A reasonable factfinder could also find, for instance, that plaintiff and defendant planned to cohabitate without marrying. More importantly, plaintiff's deposition statements do not establish that the 2006 oral agreement regarding the real property was based on defendant's alleged promise to marry plaintiff. Plaintiff has presented competing evidence that the agreement was based on defendant's need for money, and that evidence is sufficient to create a genuine issue of material fact regarding whether the alleged agreement between plaintiff and defendant was upon consideration of marriage. Thus, the trial court erred in granting summary judgment on the ground that the agreement violated the statute of frauds concerning agreements upon consideration of marriage.[3]

---

[3] Defendant contends that, assuming the parties had an agreement, the consideration was necessarily marriage, and that partial performance does not vitiate the statute of frauds in such a situation. As we have discussed, there is a dispute of material fact regarding whether the agreement was upon consideration of marriage. Thus, we need not, and do not, express an opinion on the

Plaintiff's second claim is for common-law fraud. In her amended complaint, plaintiff alleges that defendant intentionally misrepresented to plaintiff that he planned to move to Oregon in order to (1) persuade her to purchase the property in 2004, (2) convince her to transfer her one-half interest in the property to defendant in 2006, and (3) persuade her to loan money to defendant and pay the expenses associated with the property. The trial court held that, to the extent that plaintiff's theory of fraud rested on her 2004 purchase of the property due to defendant's alleged misrepresentations that he intended to move to Oregon with her, that claim was barred by the statute of limitations under ORS 12.110(1).

On appeal, plaintiff renews only her third theory of fraud—that defendant misrepresented to plaintiff that he was moving to Oregon so that she would loan him money and pay the expenses associated with the property.[4] Defendant argues, as he did before the trial court, that all of plaintiff's theories of fraud are barred by the statute of limitations. Thus, we address that preliminary issue before addressing the merits of the claim.

Plaintiff filed her amended complaint, containing her fraud claim, on March 18, 2009.[5] ORS 12.110(1) provides,

"[A]ny injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

---

subsidiary question of whether the doctrine of partial performance applies to oral agreements upon consideration of marriage.

[4] On appeal, plaintiff also argues that defendant misrepresented to plaintiff that he would reconvey her one-half interest in the property after he obtained the loan in order to persuade her to transfer her one-half interest in the property to him. Plaintiff did not present that theory of fraud to the trial court, however, so we express no opinion on it. *Leiser v. Sparkman*, 281 Or 119, 122, 573 P2d 1247 (1978) ("It is well settled that when a cause has been heard upon a certain theory in the trial court, with the acquiescence of the parties litigant, it must be so continued on appeal. The parties to an appeal are restricted to the theory upon which the cause was prosecuted or defended in the court below.").

[5] Plaintiff does not argue that, under ORCP 23 C, her fraud claim relates back to her original complaint, filed on July 24, 2008. We therefore do not address that possibility.

The word "discovery" in the statute has been interpreted in an objective manner, meaning that the two-year statute of limitations begins to run when the plaintiff knows or should have known of the alleged fraud or deceit. *Mathies v. Hoeck*, 284 Or 539, 542, 588 P2d 1 (1978). "In most cases, the inquiry will concern what a plaintiff should have known in the exercise of reasonable care. In such cases, the relevant inquiry is how a reasonable person of ordinary prudence would have acted in the same or similar situation." *Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994). Because this issue comes to us in the posture of an appeal from a grant of summary judgment, the question is whether a genuine issue of material fact exists as to when plaintiff discovered or reasonably should have discovered defendant's fraud. *See id.* at 252 (describing similar inquiry under ORS 12.110(4)).

On appeal, plaintiff's theory of fraud is that defendant intentionally misrepresented that he was moving to Oregon so that plaintiff would loan him money and pay the expenses associated with the property. In plaintiff's affidavit, she alleges that she did not become aware of, and could not reasonably have known of, defendant's misrepresentations about moving to Oregon until June 2008 because defendant continually and convincingly misrepresented that he intended to move to Oregon to live with her. According to plaintiff, because defendant's actions failed to raise her suspicions, she had no reason to investigate. In her affidavit, plaintiff alleges that "defendant moved his son in with me and I took care of his son for over a year the first time and six months the second time. During that time, the defendant would come and visit[.]" An affidavit from defendant's sister alleges that defendant moved some of his belongings to plaintiff's residence in Oregon in November 2006, but that he returned to Utah after 50 days. Plaintiff describes her discovery that defendant did not intend to move to Oregon as follows:

"The first time I suspected [defendant] lied to me was on June 8, 2008, when he came to my son Joshua's high school graduation. He told everyone he would be back in three weeks permanently. He stayed with me and we talked about the boys still not having their [driver's] licenses. He kept telling Zackeri and Joshua that they had to wait for

him to move here, so he could teach them all how to drive. He said his son Jacob did not have his license yet either and would not until they moved back to Oregon. [Defendant's] niece Tamra * * * came to Oregon against [defendant's] orders shortly after Father's Day. During a conversation with me she told me that Jacob had a Tacoma truck and he was working for Harmon's grocery store in Utah. When I confronted [defendant] he said 'wow Jake would sure like to know he has a truck and a job.' I decided to find out for myself and called Harmon's grocery store in Utah. Sure enough, Jacob had a job there. I started checking out everything else and was able to find out that [defendant] was not even processing out of his job, as he had led everyone to believe. He stated on his June 8, 2008, visit he would be back in three weeks, but he had not even begun the process. From there everything started unfolding."

Defendant argues that the trial court properly granted summary judgment with respect to the statute of limitations on plaintiff's claim of fraud because a reasonable person in plaintiff's position would have investigated defendant's circumstances no later than March 2007—that is, more than two years before plaintiff filed the amended complaint containing her fraud claim. According to defendant, the fact that defendant did not reconvey plaintiff's interest in the property to her once defendant obtained the loan triggered a duty on her part to investigate. Defendant contends that the investigation that plaintiff performed in 2008, which led to her discovery that defendant did not intend to move to Oregon, could have occurred at any time during the preceding four years, given the close nature of plaintiff's relationship with defendant.

Although a reasonable factfinder could choose to credit those inferences, a reasonable factfinder could also choose to credit plaintiff's countervailing allegations and inferences. An objectively reasonable factfinder could determine that, because defendant continually promised to move to Oregon, temporarily resided with plaintiff during the end of 2006, and sent his son to live with plaintiff for two extended periods of time, plaintiff was not aware of, and could not reasonably have been aware of, defendant's misrepresentations until June 2008. Plaintiff filed her fraud claim on March 18, 2009, less than two years after June 2008, when she alleges

that she discovered defendant's fraud. Thus, plaintiff has raised a genuine issue of material fact regarding whether the statute of limitations bars her fraud claim.

We turn to whether a genuine issue of material fact exists regarding the merits of plaintiff's fraud claim. The elements of fraud are:

> "'(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.'"

*Webb v. Clark*, 274 Or 387, 391, 546 P2d 1078 (1976) (quoting *Rice v. McAlister*, 268 Or 125, 128, 519 P2d 1263 (1974)).

Plaintiff argues that defendant defrauded her by misrepresenting to plaintiff that he was moving to Oregon so that she would loan him money and pay the expenses associated with the property. In her affidavit, plaintiff asserts that she loaned defendant $212,357.84 and conveyed her one-half interest in the property to him based on his representations, which he knew were false at the time, that he planned to move to Oregon to live with her. An affidavit from defendant's sister makes similar assertions:

> "This whole thing has been a sham since the beginning. [Defendant] had no intention of ever moving to Oregon and his [*sic*] been using [plaintiff] as his personal bank account. During this whole time, [defendant] has been living with another woman in Utah. I have seen and been privy to the costs and expenses that [plaintiff] has paid out on [defendant's] behalf over the last few years. He did all of this through deception."

Defendant contends that plaintiff failed to carry her burden to produce evidence on each of the elements of fraud. Specifically, defendant appears to argue that plaintiff failed to produce evidence that, from the beginning of the relationship, defendant knew that he had no intention of moving to Oregon permanently but, nevertheless, intended that plaintiff act on his misrepresentations to the contrary. In other words, defendant argues that plaintiff failed to

produce evidence regarding the fourth element of fraud, defendant's knowledge of the falsity of his misrepresentation or his ignorance of its truth. Viewing the evidence in the light most favorable to plaintiff, however, plaintiff has produced evidence, in the form of affidavits, from which a reasonable factfinder could find that defendant never intended to move to Oregon but nevertheless deliberately misrepresented otherwise to plaintiff in order to convince her to loan him money and convey her one-half interest in the property to him.

Defendant also argues that plaintiff's loans to defendant and conveyance of the one-half interest in the property were gratuitous. In other words, defendant argues that plaintiff has failed to produce evidence showing that defendant's misrepresentations were what caused plaintiff to transfer her one-half interest in the property to defendant. Although a reasonable factfinder could find that plaintiff's generosity was simply a manifestation of her affection for defendant, and that she expected nothing in return, a reasonable factfinder could also find that plaintiff's loans and transfer of property resulted from defendant's constant representations that he intended to move to Oregon. Thus, plaintiff has demonstrated a genuine issue of material fact on that issue.

In addition, defendant contends that plaintiff has failed to adduce evidence that defendant intended plaintiff to act on his representations, and that he intended her to act in the manner in which she did. Viewing the record in the light most favorable to plaintiff, a factfinder could reasonably infer that, by continually promising plaintiff that he planned to move to Oregon with her, defendant intended that plaintiff would advance him sums of money and pay the expenses associated with the property where they would ostensibly live together.

Finally, defendant argues that plaintiff impermissibly asks the court to infer defendant's fraudulent intent from the mere fact of nonperformance of a promise. *See Tran v. Tehrani*, 99 Or App 141, 144-45, 781 P2d 393 (1989), *adh'd to as modified on recons*, 101 Or App 216, *rev den*, 310 Or 243 (1990) ("We may not infer an intent not to perform from the

mere fact of nonperformance. There must be other evidence for inferring intent."). Plaintiff has introduced additional evidence from which the court could infer defendant's fraudulent intent, however. Again, defendant's sister's affidavit states:

> "Since June 2006, [defendant] told me that he loved [plaintiff] and was moving to Oregon to be with her. * * * This whole thing has been a sham since the beginning. [Defendant] had no intention of ever moving to Oregon and has been using [plaintiff] as his personal bank account."

Genuine issues of material fact exist regarding defendant's knowledge of the falsity of his statements that he intended to move to Oregon, his intent in making those statements, and the effect of those statements on plaintiff. The trial court therefore erred in granting summary judgment to defendant on this theory of fraud.

Plaintiff's third claim, which she pleads in the alternative to fraud, is for unjust enrichment. "The elements of the quasi-contractual claim of unjust enrichment are (1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." *Cron v. Zimmer*, 255 Or App 114, 130, 296 P3d 567 (2013). The trial court granted summary judgment for defendant on that claim because it found that plaintiff did not expect defendant to reimburse her for the monetary advances. In addition, the trial court declined to exercise its equitable powers to award relief because, in the court's view, plaintiff's 2006 letter to the bank demonstrated plaintiff's unclean hands. Thus, both of the trial court's reasons for granting summary judgment rest on the third element of unjust enrichment: a finding that it would be unjust to allow the recipient to retain the benefit without requiring him to pay for it. Consequently, we focus on the third element.

A plaintiff can show that it would be unjust to allow the recipient to retain a benefit by proving one of the following:

> "'(1) the plaintiff had a reasonable expectation of payment;

"'(2)  the defendant should reasonably have expected to pay; or

"'(3)  society's reasonable expectations of security of person and property would be defeated by non-payment.'"

*Jaqua v. Nike, Inc.*, 125 Or App 294, 298, 856 P2d 442 (1993) (quoting 1 Corbin, *Contracts* § 19A (Supp 1992)).

The evidence in the record focuses on the first two factors in *Jaqua*. In her deposition, plaintiff stated, "[Defendant] didn't directly say, 'I will pay you back for the money,' because that wasn't the way it was. It was ours, it was our future. It was nothing to do with me and my money at the time. It was all for us, for our future." During the deposition, the following exchange also occurred:

"[DEFENSE COUNSEL]:  I'm going to give you a definition first. For me a loan is when you give somebody money and they promise to pay you back. Do you understand that definition?

"[PLAINTIFF]:  I understand that.

"[DEFENSE COUNSEL]: Okay. Have you loaned money to [defendant] given that definition?

"[PLAINTIFF]:  No, it was all joint for us."

In her affidavit submitted in opposition to defendant's motion for summary judgment, however, plaintiff alleges that she expected to be reimbursed by defendant and that defendant expected to reimburse her:

"1.  I certainly did loan money to the defendant. For 4 years, I loaned the defendant $212,357.84, in costs and expenses and value given to the defendant. I loaned the defendant money, bought him motorcycles, a computer for us, which he still has, paid for his personal expenses as well as for his son Jacob.

"2.  Did the defendant ever specifically say 'I will pay you back'? The answer is no. However, I certainly expected to be paid back and the defendant certainly expected to reimburse me for these expenses, costs and all of the other items that I bought for him. These were not gifts. It was for our future."

Thus, there is conflicting evidence regarding whether plaintiff gratuitously gave defendant money or, instead, loaned him money with the expectation of repayment. In *Henderson-Rubio v. May Dept. Stores*, 53 Or App 575, 632 P2d 1289 (1981), we set forth the circumstances under which a party is able to create a genuine issue of material fact precluding summary judgment by submitting an affidavit contradicting the party's prior deposition statements. In *Henderson-Rubio*, the plaintiff sued his former employer for compensatory or vacation overtime pay. During the deposition, the plaintiff admitted that the basis for his claim of compensatory time was his own understanding of the law—not, as required by law, a contractual basis. *Id.* at 583. In his affidavit, the plaintiff contradicted his deposition statement and said that his claim for compensatory time was based on store policy. *Id.* We held that, because the plaintiff's affidavit directly contradicted his deposition testimony—rather than explaining or adding to it—and because the plaintiff made no effort to explain that inconsistency or to claim that he was confused at the time of the deposition, the plaintiff's affidavit failed to raise a genuine issue of material fact with respect to the defendant's policy on compensatory time. *Id.* at 585.

Applying *Henderson-Rubio* to the present case, we first consider whether plaintiff's deposition statements are "clearly inconsistent" with her affidavit. *Id.* at 585 n 6; *Knepper v. Brown*, 182 Or App 597, 614, 50 P3d 1209 (2002). During the deposition, defense counsel defined "a loan" as "when you give somebody money and they promise to pay you back." When defense counsel asked plaintiff whether she loaned money to defendant, she answered "no." In contrast, in her affidavit, plaintiff expressly stated, "I certainly did loan money to the defendant." Thus, in her deposition, plaintiff denied loaning money to defendant, while in her affidavit, she claimed that she had loaned money to defendant. That constitutes an "explicit contradiction[] of the 'x' versus 'not x' sort." *Knepper*, 182 Or App at 616.

Thus, we proceed to the second question: "whether plaintiff's affidavit discloses the requisite justification or explanation" for the inconsistency. *Id.* at 614. We conclude

that it does. It is apparent from plaintiff's affidavit that the affidavit and the deposition are inconsistent because "a loan" may be defined in multiple ways. As mentioned, during the deposition, defense counsel defined "a loan" as "when you give somebody money and they promise to pay you back." In her subsequent affidavit, plaintiff asserted, "Did the defendant ever specifically say 'I will pay you back'? The answer is no. However, I certainly expected to be paid back and the defendant certainly expected to reimburse me for these expenses[.]" Thus, the contradiction between the deposition and the affidavit derives from the fact that, in the deposition, plaintiff stated that defendant never promised to repay her when she gave him money, whereas in her affidavit, she clarifies that, despite the absence of defendant's explicit promise to repay her, she expected defendant to repay her, and defendant expected to repay her.

Viewing the evidence in the light most favorable to plaintiff, a reasonable factfinder could find that plaintiff reasonably expected defendant to repay her, or that defendant expected to repay plaintiff. Consequently, a genuine issue of material fact exists regarding whether it would be unjust to allow defendant to retain the benefit conferred on him without requiring him to pay for it.

The trial court also granted summary judgment for defendant on plaintiff's unjust enrichment claim because, in its view, awarding equitable relief on that claim would "sanction[] [plaintiff's] conduct in participating in a fraud on the bank[.]" Thus, the trial court appears to have applied the unclean hands doctrine to plaintiff's unjust enrichment claim. As noted earlier, however, 259 Or App at 764-66, there is a genuine issue of material fact as to whether plaintiff's 2006 letter to the bank disclaiming any interest in the property constituted participation in fraud. A reasonable factfinder could certainly find that the 2006 letter was fraudulent. However, a reasonable factfinder could also find that, because plaintiff conveyed the property to defendant on February 10, 2006, the same day as she wrote the letter to the bank, at the time she wrote the letter, plaintiff believed that it accurately represented that she had no present interest in the property. Thus, the trial court erred in granting

summary judgment against plaintiff's unjust enrichment claim on the basis of the unclean hands doctrine.[6]

In sum, plaintiff has adduced evidence showing genuine disputes of material fact with respect to all three of her claims for relief. Thus, the trial court erred in granting defendant's February 22 motion for summary judgment. Defendant's June 29 motion for partial summary judgment, in defendant's own words, "simply applies that April 2 order [granting defendant's February 22 motion for summary judgment] to defendant's counterclaim for ejectment, which deals with title to the real property and mobile home." Thus, because the grant of the June 29 motion for partial summary judgment was contingent on the erroneous grant of the February 22 motion for summary judgment, we necessarily conclude that the June 29 motion for partial summary judgment was also erroneously granted.

Reversed and remanded.

---

[6] The trial court also relied in part on *Holdner*, 176 Or App at 125, in granting summary judgment for defendant on plaintiff's unjust enrichment claim. The court's reliance on *Holdner* was misplaced because *Holdner* does not address the evidentiary requirements for a claim of unjust enrichment; instead, it holds that the proponent of an oral contract has the burden to prove the existence and terms of the contract by a clear, unequivocal preponderance of the evidence.