Argued and submitted August 29, 2017, affirmed September 18, 2019

Renee DAY,
*Plaintiff-Appellant,*

*v.*

Margaret DAY,
aka Marguerite Gregoire,
*Defendant-Respondent.*

Washington County Circuit Court
C150800CV; A161842

450 P3d 1

Plaintiff appeals following an award of summary judgment in favor of defendant on her claims for quiet title and breach of contract and raises three assignments of error. First, plaintiff asserts that the trial court abused its discretion in denying her leave to amend her complaint. Next, plaintiff argues that the trial court erred in granting summary judgment for defendant. Finally, plaintiff contends that the trial court abused its discretion in denying her motion to compel discovery of defendant's bank records. *Held*: The trial did not abuse its discretion in denying plaintiff leave to amend her complaint. Further, the trial court did not err in awarding summary judgment in defendant's favor. Plaintiff failed to produce evidence that she had an interest superior to defendant's in the property at issue for purposes of the quiet title claim, and also failed to produce evidence that an enforceable oral agreement existed between herself and defendant. Finally, plaintiff did not expressly seek an order compelling disclosure of defendant's bank records, and any error in not compelling such disclosure was harmless.

Affirmed.

Eric Butterfield, Judge.

Richard L. Grant argued the cause for appellant. Also on the briefs was Richard L. Grant, P.C.

Jeremy R. James argued the cause and filed the brief for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.

DEHOOG, P. J.

Affirmed.

**DEHOOG, P. J.**

Plaintiff appeals an award of summary judgment in favor of defendant on her claims for quiet title and breach of contract and raises three assignments of error. First, plaintiff asserts that the trial court abused its discretion in denying her leave to amend her complaint, which she requested after defendant had filed her motion for summary judgment. Next, plaintiff argues that the trial court erred in granting defendant summary judgment as to the claims raised in the original complaint. Finally, plaintiff contends that the trial court abused its discretion in denying her motion to compel discovery of defendant's bank records. As to that last matter, we note that, although plaintiff sought to postpone the summary-judgment proceedings so that she could obtain certain bank records, she did not expressly seek an order compelling their disclosure; in any event, we conclude that any error in not compelling their disclosure was harmless. Accordingly, we reject plaintiff's third assignment of error without further discussion.[1] As to plaintiff's first two assignments of error, we conclude that the trial court did not err in either instance; that is, the court did not abuse its discretion in denying plaintiff's motion for leave to amend her complaint, nor did it err in granting defendant's summary-judgment motion. We therefore affirm.

Because this appeal arises, in part, from an award of summary judgment to defendant, we review the record in the light most favorable to plaintiff, the nonmoving party, to determine whether there are any genuine issues of material fact and whether defendant is entitled to judgment as a matter of law. *Burgdorf v. Weston*, 259 Or App 755, 756, 316 P3d

---

[1] Plaintiff's argument under her third assignment of error also passingly mentions defendant's tax returns. Unlike defendant's bank records, plaintiff *did* file a motion to compel discovery of her tax returns, which the trial court denied. However, the relevant preservation section of plaintiff's brief cites only her argument about the bank records, which, as noted, was that the court should postpone summary-judgment proceedings. To the extent that plaintiff sought to appeal the denial of her motion to compel discovery of defendant's tax returns, we conclude that she has not sufficiently assigned error to that ruling and reject it on that basis. *See* ORAP 5.45(3) (requiring appellant to "identify precisely the *** ruling that is being challenged"); ORAP 5.45(4)(a) ("The court may decline to consider any assignment of error that requires the court to search the record to find the error or to determine if the error properly was raised and preserved.").

303 (2013), *rev den*, 355 Or 380 (2014); ORCP 47 C. As the party opposing summary judgment, plaintiff "has the burden of producing evidence on any issue raised in the motion as to which [she] would have the burden of persuasion at trial." *Two Two v. Fujitec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014) (internal quotation marks omitted).

The focus of plaintiff's case against defendant was a residential property that plaintiff had purchased in May 2007 for $365,000. In June 2008, plaintiff transferred that property to defendant, who at the time was married to plaintiff's son and was therefore plaintiff's daughter-in-law. Plaintiff transferred the property to defendant by means of a bargain and sale deed reflecting a sales price of $410,000; that deed was recorded in July 2008. In November 2011, defendant and plaintiff's son divorced, and the general judgment dissolving their marriage awarded defendant sole ownership of the property.

Although not alleged in the original complaint, plaintiff asserted in a declaration opposing summary judgment that, before the transfer took place, she and defendant had agreed that defendant would hold the property in trust for her. Plaintiff's declaration further states (as more or less *is* alleged in her complaint) that the parties' agreement was that, following the transfer of title, plaintiff would—in some unspecified way—assist defendant in taking out a loan that would be secured by a mortgage on the property and in an amount that was unknown because the property had not yet been appraised. Plaintiff further asserted that defendant in fact obtained a loan from "Country Wide," and that the net proceeds of the loan in the amount of $257,500 were deposited in a checking account on which plaintiff was a signatory, but which belonged to her brother, Hoffman.[2] According to plaintiff, the parties also agreed that she would make all of the mortgage payments, pay the property taxes, and maintain and insure the home. Plaintiff's declaration—but not her complaint—further asserts that she paid defendant $5,000 for qualifying for the Countrywide loan.

---

[2] Plaintiff's original complaint makes no reference to Hoffman or his interest in the account; it merely alleges that the proceeds of defendant's loan were deposited into plaintiff's bank account.

Plaintiff used the funds in her brother's account to pay off her own obligations; none of the funds were ever used by Hoffman. However, before defendant refinanced the home, plaintiff had drawn up a trust deed in the amount of $360,000, naming defendant as grantor and Hoffman as beneficiary. That trust deed was reconveyed when the $257,500 in loan proceeds were deposited in Hoffman's account. Following the transfer and until May 2015, plaintiff continued to treat the property as her own. She leased the home to tenants from May 2007 through December 2010; personally lived there from February 2011 to February 2013; and, from May 2013 on, again rented the home to tenants. Ultimately, although plaintiff offered to pay off the balance of defendant's loan, it is undisputed that defendant did not transfer the property back to plaintiff.

As a result of that series of events, plaintiff filed a complaint in February 2015 seeking to quiet title to the property and asserting a breach of contract claim against defendant. In late June 2015, approximately two months after filing an answer, defendant moved for summary judgment as to both of the claims in the original complaint. At the time, trial was scheduled to take place in December 2015. In late July 2015, plaintiff moved for leave to amend her complaint, but did not contend that her proposed amendments would cure any deficiencies that defendant had identified in her summary-judgment motion. Furthermore, although plaintiff did, at the same time, file a "Motion in Opposition to Defendant's Motion for Summary Judgment," that filing also failed to address the substance of defendant's summary-judgment arguments.[3] Rather, plaintiff's response argued that the trial court should deny summary judgment due to defendant's alleged withholding of bank records that plaintiff had requested in discovery—records that plaintiff contended were essential to an effective summary-judgment

---

[3] Although plaintiff's written response did not contend that the record on file raised issues of material fact precluding summary judgment or that defendant was not entitled to prevail as a matter of law, *see* ORCP 47 (setting forth grounds on which court may award summary judgment), she did submit a declaration that provided many of the facts that we have set out in this opinion. We do not, however, consider facts stricken from the summary judgment record by the trial court, a ruling that, as defendant points out, plaintiff has not assigned error to. *See* 299 Or App at 466-67.

response. Plaintiff alternatively requested a continuance of the summary-judgment proceedings so that she could obtain those records. The trial court heard both motions— plaintiff's motion for leave to amend and defendant's motion for summary judgment—on September 14, 2015. Ultimately, the court denied plaintiff's motion to amend, rejected both of her responses to defendant's motion, and awarded summary judgment to defendant. After the trial court entered a judgment dismissing both of plaintiff's claims with prejudice, plaintiff initiated this appeal.

For ease of discussion we begin with plaintiff's second assignment of error, in which she contends that the trial court erred in granting defendant's motion for summary judgment.[4] Plaintiff's complaint purported to state two claims. In her first claim for relief, plaintiff sought to quiet title to the property she had deeded to defendant. In relevant part, the complaint alleged:

"3.

"On or about May 24, 2007, [plaintiff] purchased real property with a common address of 16785 S.W. Upper Boones Ferry Road, Durham, Washington County, Oregon 97224 ('the property'), for the price of $365,000, and she was placed on the title as the fee simple owner. * * *

"4.

"Thereafter, [plaintiff] made improvements to the home, which included a new roof, new carpeting, flooring and appliances, and rented the property to tenants.

"5.

"Defendant claims some interest adverse to plaintiff's in the real property described above, but defendant's claim is without merit and defendant has no estate, title, claim or interest in the real property or any portion there of [*sic*]."

In turn, plaintiff's breach of contract claim asserted, in relevant part:

---

[4] As noted, plaintiff's first assignment of error contends that the trial court erred in denying her motion for leave to amend her complaint, which she filed while defendant's summary judgment motion was pending. We discuss below the extent to which, if at all, plaintiff's proposed amendments to her complaint would have affected the merits of defendant's summary-judgment argument.

"7.

"In June, 2008, \* \* \* [t]o assist [plaintiff] by obtaining a mortgage, [defendant] entered into an agreement with [plaintiff] under which the property would be transferred into [defendant's] name solely for purpose of helping [plaintiff] consolidate debt and pay off [her] creditors. As part of the agreement, [defendant] agreed to then take out a mortgage, and the funds were to be paid to [plaintiff] for purposes of paying off [her] debt.

"8.

"In conformance with [that] agreement \* \* \*, on June 7, 2008, [plaintiff] transferred the property to [defendant] by means of a Bargain and Sale Deed. At the time, the property in question was free and clear of any liens or encumbrances, and [plaintiff] was the fee simple owner. The deed was recorded on July 7, 2008.

"9.

"Thereafter, [defendant] applied for and obtained a loan with Country Wide [*sic*] in the total amount of $262,500. The property was used as collateral for the loan.

"10.

"The [Countrywide] loan closed on December 24, 2008, and [defendant] authorized the entire net proceeds in the amount of $257,000 \* \* \* to be released to [plaintiff], who then deposited all the proceeds into [her] bank account with Chase Bank on December 24, 2008.

"11.

"Thereafter, [plaintiff] commenced making each payment and has made every payment on the [Countrywide] loan, together with payments of all real property taxes, property insurance, and all maintenance expenses related to the property.

"\* \* \* \* \*

"13.

"On February 12, 2013, [defendant] came to see [plaintiff] \* \* \* while [plaintiff] was living in [the property, where she] had been residing \* \* \* since January, 2011.

"\* \* \* \* \*

"15.

"When [defendant] came to see [plaintiff], they discussed [defendant] transferring the property back into [plaintiff's] name, and [defendant] agreed to transfer the property.

"* * * * *

"17.

"[Sometime after] February 13, 2013, * * * all of [plaintiff's] personal belongings were moved out of the house on the property. Thereafter, starting in May of 2013, the house was rented to Cameron and Christine Simones as tenants. Since renting the house in May of 2013, the Simones[es] have paid $1,750.00 in rent every month to [plaintiff].

"* * * * *

"20.

"Plaintiff offered to pay off the loan in defendant's name in October, 2014. Since such time, defendant has refused to allow the payoff of the loan and transfer the property back into plaintiff's name. Despite plaintiff's offer and defendant's prior agreement that she would transfer the property back into [plaintiff's] name, [defendant] has now refused to do so.

"* * * * *

"22.

"[Plaintiff] has performed all conditions precedent required of her under the terms of her agreement with [defendant] and is hereby ready, willing, and able to pay off the existing loan."

In addition to those allegations, the complaint alleged that plaintiff's monthly loan payments had been in the amount of $1,960.04. As relief, plaintiff sought, in relevant part, a determination of any claims defendant might have to the property, a declaration that plaintiff is the fee simple owner of the property, and an award of her costs and disbursements. Plaintiff's original complaint neither alleged nor sought damages for defendant's alleged breach of contract.

Before turning to the merits of plaintiff's second assignment of error, we must address two preliminary matters.

First, on appeal, the parties dispute what evidence is in the summary-judgment record. At the summary-judgment hearing, defendant moved to strike certain portions of the declaration that plaintiff submitted in opposition to summary judgment, as well as those of her attorney and her brother, Hoffman. The trial court granted those motions, in part, striking portions of each declaration. Plaintiff acknowledges, as defendant points out, that she did not expressly challenge those decisions in her opening brief. She contends, however, that because she assigned error to the "trial court's entire grant of summary judgment" she "necessarily" also challenged the trial court's "decision to ignore (by striking)," the evidence that plaintiff submitted. Plaintiff's argument is unavailing. The rules of appellate procedure do not allow for such sweeping assignments of error. *See* ORAP 5.45(3) ("Each assignment of error must identify *precisely* the legal, procedural, factual, or other ruling that is being challenged." (Emphasis added.)). Moreover, even if plaintiff's assignments of error *did* encompass a challenge to the trial court's evidentiary rulings, she advanced no argument in her opening brief as to how those rulings were erroneous; indeed, even on reply she merely asserts that she assigned error to the rulings, not that under applicable law they were, in fact, erroneous. Accordingly, we reject any suggestion by plaintiff that the stricken portions of the declarations are part of the summary-judgment record, and we disregard plaintiff's references to them on appeal.

The second preliminary matter relates to preservation. In her response brief, defendant says that plaintiff preserved her second assignment of error "in opposing defendant's motion for summary judgment." As we note above, however, although it is true that plaintiff filed a responsive memorandum and declaration, she did not address the legal merits of defendant's summary-judgment arguments. Notably, the argument that the parties focus on in this appeal is one that plaintiff made in a reply brief filed in support of her motion to amend the complaint, not in response to defendant's summary-judgment motion; moreover, at defendant's request, the trial court expressly excluded that reply from the summary-judgment record. As a result, it is not clear to us that plaintiff did, in fact, preserve the arguments

she advances in support of her second assignment of error. However, because we ultimately conclude that the trial court did not err in granting defendant's summary-judgment motion, we need not conclusively answer that question.

Proceeding, then, with the merits of plaintiff's second assignment, we first consider plaintiff's quiet-title claim. Defendant argues, as she did in the trial court, that summary judgment was warranted because plaintiff could not prove an essential element of that claim. As defendant correctly observes, to prevail on a quiet-title claim, plaintiff was required to prove (1) that she had a substantial interest in, or claim to, the disputed property; and (2) that her title was superior to that of defendant. *Coussens v. Stevens*, 200 Or App 165, 171, 113 P3d 952 (2005), *rev den*, 340 Or 18 (2006). Here, defendant argues, plaintiff could not show that she had any ownership interest at all, much less an interest superior to the interest defendant had acquired from her through the bargain and sale deed.

We agree with defendant that the trial court properly granted summary judgment on plaintiff's quiet-title claim. It is undisputed that plaintiff transferred title to the property at issue to defendant and that defendant did not reconvey title to her. Moreover, despite defendant's argument on summary judgment that plaintiff's evidence was lacking,[5] plaintiff neither pointed to evidence in the record showing that she had a superior interest in the property, nor contended that she was not required to make that showing. Likewise, on appeal, plaintiff does not contend that the evidence gives rise to a genuine issue of material fact or that defendant is wrong as a matter of law; instead, on reply, plaintiff argues for the first time that possession of a deed is not dispositive in a quiet-title action when, as here, the deed is held in trust. But even assuming that we can consider that argument, despite plaintiff having raised it for the first time in her reply brief, we reject it. As noted, plaintiff did not allege in the original complaint that defendant had held the deed in trust. Thus, plaintiff's argument that the

_____

[5] Defendant did not contend in the trial court that plaintiff's complaint failed to state a quiet title claim, notwithstanding the absence of any allegation that plaintiff had a substantial interest or claim to the property or that her title was superior to defendant's.

quiet-title action could proceed is dependent upon the allegations of her proposed amended complaint. And because, as we explain below, we reject plaintiff's contention that the trial court abused its discretion in denying her request to amend the complaint, any argument dependent upon that amendment also fails.

We reach the same conclusion as to the trial court's grant of summary judgment on plaintiff's breach of contract claim. In her summary-judgment motion, defendant argued to the trial court that, as a matter of law, plaintiff would be unable to prevail on that claim. According to defendant, plaintiff would be unable to present admissible evidence of the purported oral agreements on which she sought to base her contract claim. And, even if plaintiff could produce admissible evidence, her contract claim would still be legally deficient. That, defendant argued, was because (a) the alleged oral agreements lacked various essential terms, such as the time of performance and the amount to be paid to plaintiff; (b) the terms alleged were insufficiently definite to be enforceable; (c) there was no allegation or evidence of consideration for the alleged agreements; and (d) under the applicable statute of frauds, ORS 93.020(1),[6] an oral agreement that defendant would reconvey the property to plaintiff would be void.

As with her quiet title claim, plaintiff did not address the merits of defendant's summary-judgment argument regarding her contract claim. Rather, she asserted that she could not fairly respond to defendant's argument without defendant's bank records, which defendant had refused to provide. Accordingly, plaintiff contended, unless the court agreed to simply deny defendant's motion due to her unwillingness to comply with her discovery obligations, the trial court should continue the summary-judgment proceedings to enable plaintiff to acquire the requested records. On appeal, however, plaintiff's argument has changed. Now she argues that, although it was undisputed that she had signed a bargain and sale deed conveying title to the property to defendant, the summary-judgment record discloses a factual dispute as to whether, as defendant contends, that

---

[6] The text of ORS 93.020(1) is set out below. 299 Or App at 470.

transfer reflected an outright sale, or, instead, as plaintiff sees things, resulted in the property being held in trust in defendant's name, to be transferred back to plaintiff upon completion of the parties' agreement. Plaintiff further asserts that, by relying on evidence that the parties partly performed the alleged contract, she can establish that a contract existed, notwithstanding the statute of frauds. In response, defendant reprises her argument that summary judgment was warranted because plaintiff failed to present admissible evidence of a valid written agreement, without which, defendant contends, the evidence cannot give rise to a triable issue of fact. Defendant also reprises various other arguments in support of the trial court's ruling. Relatedly, defendant argues that plaintiff misconstrues the summary judgment record on appeal.

Central to both parties' arguments on appeal is the application of the statute of frauds. Plaintiff's theory is that an oral agreement accompanied—or, perhaps, followed—the written bargain and sale deed that she had used to transfer ownership of the property to defendant. In making that argument, plaintiff does not dispute that, typically, the statute of frauds precludes parties from relying on oral agreements to establish long-term interests in real property. As relevant here, the applicable statute of frauds states:

> "No estate or interest in real property, other than a lease for [a] term not exceeding one year, nor any trust or power concerning such property, can be created, transferred or declared otherwise than by operation of law or by a conveyance or other instrument in writing, subscribed by the party creating, transferring or declaring it, or by the lawful agent of the party under written authority, and executed with such formalities as are required by law."

ORS 93.020(1). Moreover, plaintiff does not contend that the oral agreement she seeks to rely on somehow complies with the requirements of that statute. Instead, citing *Burgdorf*, 259 Or App at 758, plaintiff argues that the doctrine of partial performance renders defendant's oral agreement enforceable notwithstanding the statute of frauds. For the reasons that follow, we conclude that plaintiff's reliance on that doctrine is misplaced.

Under the doctrine of partial performance, a court may enforce an oral agreement concerning the sale or transfer of an interest in land if the party asserting the doctrine shows, by a preponderance of the evidence, (1) "the existence of an agreement that is clear and unambiguous in its terms"; (2) "that the partial performance unequivocally and exclusively refers to the agreement"; and (3) "that there are equitable grounds for enforcing the agreement." *Id.* at 758 (citing *Mukai Living Trust Dated Dec. 8, 1997 v. Lopez*, 199 Or App 341, 345, 111 P3d 1150 (2005)). As the Supreme Court has held under Oregon's more general statute of frauds, ORS 41.580, "[t]he specific performance of a [parol] contract for the conveyance of real estate will not be enforced under any circumstances unless the terms of the contract are shown by full, complete, and satisfactory proof to have been so precise that neither party could reasonably misunderstand them." *Eugene Pioneer Cemetery Ass'n v. Spencer Butte Lodge No. 9*, 228 Or 13, 43, 363 P2d 1083 (1961) (noting that even the pleadings were ambiguous as to the precise terms of the agreement); *see also Mukai Living Trust*, 199 Or App at 345 (affirming summary judgment where nothing in the record amounted to evidence from which a rational juror could find that the parties entered into an agreement with precise terms that neither party could reasonably misunderstand or that plaintiff's alleged acts of partial performance could be explained only by the existence of a contract creating a trust).

Here, noting that *Burgdorf*, the case on which plaintiff principally relies, involved a request for declaratory relief, defendant contends that the partial-performance doctrine does not apply to legal actions like plaintiff's breach of contract claim. Defendant further argues, among other things, that, even if the doctrine theoretically *could* apply in this case, plaintiff's evidence fails to satisfy at least two of the doctrine's three elements. That is, even when viewed in the light most favorable to plaintiff, the summary-judgment record cannot support a finding that the parties entered into an agreement that is "clear and unambiguous in its terms," nor can it support a finding of partial performance that "unequivocally and exclusively" referred to such an agreement. We agree with defendant that plaintiff's evidence is

insufficient to raise a genuine issue of fact as to either of those required elements of her partial-performance theory. Thus, even assuming, without deciding, that a partial-performance theory could apply to plaintiff's contract claim, we conclude that the trial court did not err in awarding defendant summary judgment as to that claim.[7]

A review of the summary-judgment record demonstrates how plaintiff's evidence was lacking. In conjunction with her motion for summary judgment, defendant filed a declaration in which she stated that she had purchased the property from plaintiff for $410,000 and that

> "I never made any agreement with plaintiff that my purchase of the Property was in any way related to plaintiff's ability to consolidate debt or pay off creditors. I did not purchase the Property because I wanted to help plaintiff, and I never had any intention of transferring the Property back into plaintiff's name at any point. I did not enter into an agreement, oral or written, with plaintiff to transfer the Property back to plaintiff or to allow plaintiff to pay off any of my debt."

In response to defendant's motion, plaintiff submitted two declarations, one from her attorney, Richard Grant, and one from plaintiff herself. Other than stating that plaintiff had rented the property to three sets of tenants after transferring it to defendant, Grant's declaration focused on plaintiff's request for production and the relevance of defendant's bank records, rather than the existence of, or performance under, the alleged contract. Plaintiff's declaration, on the other hand, provided, in relevant part:

> "4.   One year after purchasing the home, I entered into discussion with my then daughter-in-law, [defendant], with regard to having her qualify for a loan for purposes of obtaining funds to pay off obligations with regard to the initial purchase of the property in May, 2007. It was agreed prior to the time of my transferring property to her

---

[7] Because we uphold the trial court's ruling on that basis, we need not consider defendant's additional contentions on appeal, including that the complaint did not sufficiently allege the elements of plaintiff's partial performance theory, that the complaint did not sufficiently state a claim for breach of contract—whether oral or written—or that there are not equitable grounds to enforce the alleged oral agreement.

that I would assist [defendant] with obtaining a new loan with a mortgage against the property in an undetermined amount. We did not know what the property would appraise for, nor the amount she would be able to qualify for.

"5.    It was agreed between [defendant] and myself that she would hold the property in trust for me in her name and that I would make all of the mortgage payments, real property taxes, as well as maintaining and insuring the home. At approximately the time she applied for the loan, I paid [defendant] $5,000 for qualifying for the refinance on the property.

"6.    At the same time that I drew up the Bargain and Sale Deed to [defendant], I also drew up a Trust Deed in the amount of $360,000 naming the beneficiary as Gregory Hoffman, who is my brother. The Trust Deed in favor of Gregory Hoffman was placed on the property to enable [defendant's] refinance to be a 'no cash out' loan.

"7.    On June 7, 2008, I personally prepared the Deed of Trust and Bargain and Sale Deed to [defendant]. ＊＊＊

"8.    Thereafter, [defendant] proceeded with applying for a loan through Country Wide. This loan took several months and recorded December 24, 2008, securing the loan in the amount of $262,500. All closing costs for the loan were deducted from the proceeds, and a check in the net amount of $257,500 was issued by the lender and deposited into the Chase Bank account of Gregory Hoffman.

"＊＊＊＊＊

"10.    I was a signatory on the account in Gregory Hoffman's name. All of the proceeds deposited into that account from the loan through Country Wide by [defendant] were used by me for purposes of paying off amounts owed from the original purchase of the property together with payment of other bills. None of the funds deposited into that account were ever used by Gregory Hoffman.

"11.    The Trust Deed in the amount of $360,000 in favor of Gregory Hoffman was reconveyed through escrow by payment of the loan proceeds in the amount of $257,500. During her deposition, [defendant] had no explanation as to where the approximately $103,000 difference in amount went or what was the cause of this difference between the amounts.

"12.   From May of 2007 through March, 2015, I personally maintained complete control over every aspect of the property. I leased the property to tenants from May, 2007 through September 2010. Thereafter, from February 2011 through February 13, 2013, I personally resided at the property as my residence."

That declaration—the only evidence of the agreement that plaintiff submitted in opposition to summary judgment—is insufficient to satisfy the partial-performance doctrine. We begin with the requirement that the agreement be "clear and unambiguous in its terms." *Burgdorf*, 259 Or App at 758. Although the complaint is less than clear as to what the alleged agreement was, we take plaintiff's argument to be that the parties had agreed that plaintiff would transfer the property into defendant's name, for the sole purpose of acquiring loan funds for plaintiff, and that defendant would convey the property back to plaintiff once the loan had been repaid. Even before considering plaintiff's declaration, we note that the complaint contains no allegation that defendant promised to transfer the property back to plaintiff as part of the alleged agreement—it simply alleges an agreement to transfer title for financing purposes and various actions that plaintiff subsequently took in regard to the property.[8] *See Eugene Pioneer Cemetery Ass'n*, 228 Or at 43 (similarly observing that the pleadings themselves were ambiguous as to the terms of any agreement).

Moreover, to the extent that the alleged purpose of the initial transfer suggests an expectation on plaintiff's part that the property would eventually be returned to her, nothing in her declaration makes that point at all, much less unambiguously so. True, plaintiff asserts an agreement that defendant "would hold the property in trust for [plaintiff] in [defendant's] name," but she provides no information regarding the terms of the alleged trust, such as whether defendant was required to reconvey the property to plaintiff upon plaintiff's satisfaction of some condition—such as paying off the loan—or upon defendant's failure to satisfy some

---

[8] As set out above, 299 Or App at 465-66, the complaint did allege that defendant agreed in February 2013 to transfer the property. However, plaintiff advances no argument suggesting that the alleged February 2013 agreement is the agreement that her partial performance rendered enforceable.

condition—such as paying the ostensible deficiency between the loan proceeds and the $410,000 sales price—or upon any other condition; indeed, like the complaint itself, plaintiff's declaration never states that plaintiff's transfer of the property was premised on defendant's agreement to transfer it back. Without evidence that the parties necessarily anticipated that defendant would return the property to plaintiff, plaintiff cannot contend that the parties had a clear, unambiguous agreement that she would do so. *Cf. Burgdorf*, 259 Or App at 762 (statement in the plaintiff's declaration that her "agreement to sign the property over to [defendant] was based on his agreement to put me back on title after the loan closed" was sufficient to raise jury question as to whether alleged oral agreement had been clear and unambiguous (bracketed material in original)). Stated differently, nothing in the record could support a jury finding that defendant could only have understood that she was required to convey the property back to plaintiff regardless of plaintiff's acquisition of the loan proceeds, the reconveyance of the Hoffman trust deed, or anything else. *See Mukai Living Trust*, 199 Or App at 345 (affirming summary judgment where nothing in the record amounted to evidence from which a rational juror could find that the parties entered into an agreement with precise terms that neither party could reasonably misunderstand).

Furthermore, even if we were to conclude that plaintiff's evidence could satisfy the "clear and unambiguous" prong of the partial-performance doctrine, we could not reach the same conclusion regarding the second requirement, that plaintiff's alleged partial performance of the parties' agreement "unequivocally and exclusively" refer to such an agreement. *Burgdorf*, 259 Or App at 762. One plausible understanding of plaintiff's evidence is that she gave her daughter-in-law title to her property, in return for which plaintiff received $257,500, representing a debt that defendant—not plaintiff—owed Countrywide. Plaintiff then made payments on behalf of defendant, including the mortgage, property taxes, maintenance, and insurance, but she also lived in the home during much of that time; furthermore, according to plaintiff's declaration, when she rented the property out to others, their rental payments went to

defendant, not to her. As a result, plaintiff's routine pay-
ment of defendant's property-related expenses was not
unlike a familiar rental arrangement, where a tenant pays
a monthly rental amount that enables the homeowner to
pay the mortgage and the upkeep of the rental property.
And, although the available evidence suggests that plaintiff
may not have held defendant—who at the time remained a
member of her family—to the full sales price of $410,000 (or
even the $360,000 that the Hoffman trust deed secured),
the evidence was that the sales price was negotiated without
knowledge of the home's likely appraisal value.[9] To be sure,
under those circumstances, the conduct that plaintiff char-
acterizes as partial performance of the parties' alleged oral
agreement *could*, in fact, have been just that. Significantly,
however, it could also have been conduct in accordance with
a more-or-less arm's length sale of the property to plaintiff's
daughter-in-law—that is, it is not "unequivocally and exclu-
sively" referable to an agreement of the sort plaintiff sug-
gests. *See Mukai Living Trust*, 199 Or App at 345 (require-
ment that alleged partial performance "unequivocally and
exclusively" refer to agreement means that conduct can
*only* be explained by the existence of an oral agreement).
And while we are cognizant that it is the factfinder's role
to determine whether the evidence satisfies the "unequiv-
ocal and exclusive" prong of the partial performance doc-
trine, we conclude that no rational factfinder could make
that finding on the summary-judgment record in this case.
Accordingly, the trial court did not err in awarding sum-
mary judgment in defendant's favor on plaintiff's contract
claim.

Returning to plaintiff's first assignment of error,
plaintiff contends that the trial court abused its discre-
tion in denying her leave to amend her complaint. Plaintiff
sought to amend her complaint to include: (1) new defendants

[9] Although neither party argues the point, we take judicial notice that the
transfer from plaintiff to defendant took place just before the nationwide eco-
nomic downturn and corresponding reduction in home prices. OEC 201(b). Given
those circumstances, together with the family relationship, a rational factfinder
could find that plaintiff did not intend to hold defendant to the negotiated sales
price, which far exceeded the loan defendant was able to acquire based, presum-
ably, on the home's appraised value.

("Jane Does 1, 2, and 3 and all others");[10] (2) three new claims (unjust enrichment, ejectment, fraud); (3) new factual allegations; and (4) new forms of relief (either monetary damages in the amount of $300,000 or the imposition of a constructive trust). The original complaint was five pages, whereas the amended complaint was 11.

Amendment of pleadings is governed by ORCP 23 A, which provides, in relevant part,

> "A pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

We review the court's allowance or denial of leave to amend for abuse of discretion. *Engelcke v. Stoehsler*, 273 Or 937, 944, 544 P2d 582 (1975). Four considerations bear on the appropriateness of the court's exercise of discretion:

> "(1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendments."

*Ramsey v. Thompson*, 162 Or App 139, 145, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000). In this case, plaintiff acknowledges that all four *Ramsey* factors are potentially relevant, but notes that defendant's objection to her motion for leave to amend raised only two of the factors: prejudice to defendant and the colorable merit of plaintiff's proposed amendments. Furthermore, because, in plaintiff's view, defendant's prejudice argument is foreclosed by our case law, and, on appeal, defendant presents only a limited challenge to the merits of her proposed amendments, plaintiff argues that three of the four *Ramsey* factors either support the proposed amendment

---

[10] According to plaintiff's proposed amended complaint, the new "Doe" defendants were tenants with whom defendant had entered into a residential lease agreement in violation of plaintiff's possessory rights in the property.

or are neutral.[11] And, citing *Caldeen Const., LLC v. Kemp*, 248 Or App 82, 89, 273 P3d 174 (2012), plaintiff contends that "[w]hen at least three of the *Ramsey* considerations favor allowing a party to amend, it is an abuse of discretion to deny the motion to amend."

As an initial matter, we do not read *Caldeen Const., LLC* as establishing the bright-line rule that plaintiff suggests. In *Caldeen Const., LLC*, we concluded that, after considering all four *Ramsey* factors, the trial court had abused its discretion in denying the plaintiff's motion to amend. *Id.* at 90. It is true that in that case, three factors favored allowing amendment and the fourth factor was neutral, given that the record in that case was insufficient for us to assess whether the proposed amendments had colorable merit. We did not, however, mechanically count the *Ramsey* factors as plaintiff suggests, nor have we done so in any case since *Caldeen Const., LLC*. That said, we proceed to consider all four factors to determine whether the trial court abused its discretion in denying plaintiff's motion under ORCP 23 A.

We begin with the first *Ramsey* factor, the nature of the proposed amendments and their relationship to the existing pleadings. Plaintiff argues that this factor weighs in her favor because, although the proposed amendments included three additional theories of recovery, all three claims arose under the same facts as her existing claims. Additionally, the ejectment claim did not arise until defendant chose to interfere with plaintiff's tenants and took over control of the property, which did not occur until after plaintiff had filed the original complaint. Moreover, plaintiff argues, with the exception of the ejectment claim, any "change" to the complaint was merely a change in the form of her allegations, and not a change to the underlying character of her claims. And, in that regard, the "new" facts that plaintiff proposed to add to the complaint did not expand the existing allegations; rather, she contends, they simply lent clarity to the allegations that were already there.

---

[11] Plaintiff notes that defendant does not argue that the timing of the proposed amendments or related docketing concerns weighed against plaintiff's request.

In response, defendant disputes plaintiff's contention that the three new claims and three new defendants would not have substantially altered the nature of plaintiff's case. As noted, plaintiff's proposed amendments would have added new facts, three new claims—unjust enrichment, fraud, and ejectment—and, for the first time, an allegation of damages with an alternative request that the court impose a constructive trust. According to defendant, allowing the damages allegation and the related request for a constructive trust alone would have imposed new risks on defendant and would have required additional investigation, discovery, and evidence to defend. And rather than merely clarifying the existing factual allegations, defendant argues, the facts that plaintiff proposed to add—including facts related to plaintiff's post-transfer interactions with defendant, her various tenants, the substantial capital improvements that she had made to the property, and the role of her brother, Hoffman—greatly expanded the scope of plaintiff's case. Under the circumstances of this case, it was not unreasonable for the trial court to view this factor as weighing against plaintiff's request.

Each of plaintiff's new claims would have required her to prove materially different elements—with correspondingly different evidence—than the claims in the existing complaint. For example, to establish her unjust enrichment claim, plaintiff would have had to prove, among other things, that it would be unjust to allow defendant to retain a benefit that plaintiff had conferred without requiring defendant to pay for it. *Cron v. Zimmer*, 255 Or App 114, 130, 296 P3d 567 (2013). And, as defendant observed as part of her statute of frauds argument, neither the existing complaint nor the supporting declaration contended that the equities weighed in favor of granting plaintiff relief. Plaintiff's proposed fraud and ejectment claims would similarly have injected new issues into the case. *See Conzelmann v. N.W.P. & D. Prod. Co.*, 190 Or 332, 350, 225 P2d 757 (1950) (elements of fraud include, among others, proof of a *false representation* and the plaintiff's *reasonable reliance* on the representation); ORS 105.005 (ejectment action requires a *present right to possession* of property); *Eggen v. Wetterborg*, 193 Or 145, 151, 237 P2d 970 (1951) (same).

Moreover, this is not a case like *Ramsey*, where the plaintiff's proposed amendments were proffered to cure deficiencies that the defendant had identified in a motion to strike. 162 Or App at 147; *see also Jensen v. Duboff*, 253 Or App 517, 524, 291 P3d 738 (2012) (stating, in case where amended complaint alleged same three claims against same four parties, but, in an attempt to cure defects, provided more precise facts and supporting exhibits, that "[l]eave to amend is more freely given where the plaintiff does not introduce new claims but simply strengthens existing ones"); *Caldeen Const., LLC*, 248 Or App at 89 (trial court abused its discretion in denying leave to amend complaint where proposed amendments would not have introduced new claims into case, were proffered in response to defendant's first responsive pleading, and would have clarified plaintiffs' allegations of causation). Indeed, in this case, plaintiff expressly stated at the hearing on her proposed amendments that they were *not* being proffered in an effort to address perceived deficiencies in the existing complaint. As a result, this is not a case in which a party who has successfully challenged the sufficiency of a complaint later seeks to obstruct a good faith effort to correct that pleading's identified defects.

The prejudice and timing factors require relatively little discussion. As plaintiff points out in her briefing, the focus of defendant's prejudice argument is that she would face further exposure and have to prepare additional defenses if plaintiff were allowed to amend the complaint. We have explained, however, that those general consequences that tend to accompany any amendment are not prejudice of a sort that weighs against allowing an amendment under ORCP 23 A. *See Jensen*, 253 Or App at 524 (fact that defendant will have to continue defending an action "does not constitute prejudice; rather, it is a generic assertion common to every defendant opposing a plaintiff's motion to amend"); *Safeport, Inc. v. Equipment Roundup & Mgf, Inc.*, 184 Or App 690, 700, 60 P3d 1076 (2002), *rev den*, 335 Or 255 (2003) (where opposing party does not identify *particular* prejudice if amendment were allowed, a vague claim of prejudice is not well taken). And, relevant to both the prejudice and timing factors, defendant did not argue that she would be unable to prepare the necessary defenses in the time remaining before

trial, nor was there any indication that the proposed amendments would necessitate postponing the existing trial date in a manner that would be prejudicial to defendant or interfere with the trial court's management of its own docket. Thus, even accepting that the proposed amendments would require defendant to prepare a defense against a more complex case in a relatively short time, the second and third factors add little if any weight to defendant's position.

Turning, finally, to the fourth *Ramsey* factor, we conclude that the colorable merit of plaintiff's new allegations—or, more accurately, the relative lack thereof—weighs against the requested amendment. That is, to the extent that defendant's failure to argue the merits of some of the proposed amendments on appeal suggests defendant's view that they do have merit, we do not necessarily share that view. We do not suggest that the proposed amendments regarding fraud, ejectment, and unjust enrichment did not, as alleged, state claims, and, for purposes of discussion, we assume that those allegations were sufficient to do so. However, the trial court was not required to limit its assessment of the colorable merit of those claims to the bare allegations of the proposed amended complaint. Rather, it was permitted to consider them in light of the existing case, including defendant's challenge to the original complaint. Central to that challenge was the absence of any allegation or evidence that, at the time that plaintiff transferred the property to her, defendant had agreed to someday restore plaintiff's title, whether upon plaintiff's satisfaction of a condition or upon defendant's failure to fulfill a requirement of her own. That absence persisted throughout the summary-judgment proceedings, even though defendant put plaintiff on notice through her motion and plaintiff had an opportunity to address it through the declaration she submitted in response. Thus, in evaluating the colorable merit of plaintiff's new claims, the trial court was entitled to conclude that plaintiff would likely be unable to produce that evidence. Moreover, because each of plaintiff's proposed new claims as alleged would likewise have required plaintiff to prove that defendant had acquired title by promising to restore the property to plaintiff's name, the court was entitled to conclude that she was unlikely to be unable to prove those

claims as well.[12] As a result, the court reasonably could have concluded that plaintiff's proposed amendments lacked colorable merit. Accordingly, the fourth *Ramsey* factor weighs heavily against plaintiff in this case.

Considering all four factors, we conclude that the trial court did not abuse its discretion in denying plaintiff's request for leave to amend her complaint. Although there was little if any indication that the amendments would have prejudiced defendant or affected the trial court's management of its docket, plaintiff's proposed amendments would have substantially altered the nature of the action and, given the procedural history of the case, the court could have reasonably concluded that plaintiff would likely be unable to prove her new claims and that the proposed amendments therefore lacked colorable merit. Although it may not have been a foregone conclusion that plaintiff would be unable to produce the evidence needed to sustain her new claims, and, given the other factors, another court may reasonably have concluded that the *Ramsey* factors tipped in favor of allowing the proposed amendments, we cannot conclude that it was an abuse of discretion for the trial court in this case to have viewed those factors as weighing against plaintiff's request. As a result, it was reasonable for the court to deny plaintiff's request based on that view of the *Ramsey* factors, and, accordingly, the trial court did not abuse its discretion in denying plaintiff leave to amend.

Affirmed.

---

[12]  As noted, 299 Or App at 474 n 8, even though the original complaint alleged that defendant had agreed in February 2013 to transfer the property, plaintiff has not argued that that agreement is the basis of her contract claim. Similarly, we do not understand the proposed amendments to the complaint or plaintiff's arguments regarding them to suggest that defendant's conduct or statements in 2013 and 2014, five or six years after plaintiff transferred the property to defendant, could serve as an independent basis for any of her claims, old or new.